UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DRIFTWOOD LAVENDER, LLC, a
Michigan limited liability company,
ALICIA TATHAM, an individual,
and MARK ANDERSON, an individual,

        Plaintiffs,

v.

LAKE TOWNSHIP, a Michigan
Municipal corporation,

        Defendant.

Case No.:  2:26-cv-10196-LJM-DRG

Honorable Laurie J. Michelson
Chief Magistrate David R. Grand

| | |
|---|---|
| Joseph M. Infante (P68719)<br>Stephen M. Ragatzki (P81952)<br>MILLER, CANFIELD, PADDOCK & STONE<br>Attorneys for Plaintiffs<br>99 Monroe Avenue, NW Suite 1200<br>Grand Rapids, MI 49503<br>(616) 776-6333<br>infante@millercanfield.com<br>ragatzki@millercanfield.com | Bogomir Rajsic, III (P71919)<br>Tracey R. Devries (P84286)<br>McGRAW MORRIS MASUD<br>44 Cesar E. Chavez Avenue SW, Suite 200<br>Grand Rapids, MI 49503<br>(616) 288-3700/Fax (248) 502-4001<br>brajsic@mcgrawmorris.com<br>tdevries@mcgrawmorris.com<br><br>Thomas J. McGraw (P48814)<br>McGRAW MORRIS MASUD<br>Attorneys for Defendant<br>2075 W. Big Beaver Road, Ste 750<br>Troy, MI 48084<br>(248) 502-4000/Fax (248) 502-4001<br>tmgraw@mcgrawmorris.com |

## DEFENDANT LAKE TOWNSHIP'S ANSWER AND AFFIRMATIVE DEFENSES

NOW COMES Defendant, Lake Township, by and through its attorneys,

McGraw Morris Masud, and for its Answer to Plaintiffs' Complaint states:

1

## PARTIES AND JURISDICTION

1.      Plaintiff Driftwood Lavender is a limited liability company organized and existing under the laws of the State of Michigan.

**ANSWER:   The allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leave Plaintiffs to their strictest proofs.**

2.      Plaintiffs Alicia Tatham and Mark Anderson are a married couple residing in Lake Township, Michigan.

**ANSWER:   The allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leave Plaintiffs to their strictest proofs.**

3.      Defendant Lake Township is a Michigan general law Township located in Huron County, Michigan.

**ANSWER:   Admitted.**

4.      This action arises under the United States Constitution and 42 U.S.C. § 1983.

**ANSWER:   As set forth below, Defendant denies the acts and/or omissions alleged. The balance of the allegations constitute legal conclusions for which no answer is required.**

5.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and

1343.

**ANSWER:   The allegations constitute legal conclusions for which no answer is required.**

6.       This Court has the authority to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

**ANSWER:   The allegations constitute legal conclusions for which no answer is required.**

7.       This Court has the authority to grant injunctive relief under Federal Rules of Civil Procedure 57 and 65.

**ANSWER:   The allegations constitute legal conclusions for which no answer is required.**

8.       Venue is proper in this Court under 28 U.S.C. § 139l(b) because the Township is located in Huron County, Michigan, which is in this judicial district, and because the events or omissions giving rise to Plaintiffs' claims occurred in this judicial district.

**ANSWER:   Defendant denies the events and omissions as characterized, but otherwise do not contest venue.**

9.       Plaintiffs' claim for attorneys' fees and costs is authorized by 42 U.S.C. § 1988.

**ANSWER:   Defendant denies that Plaintiffs are entitled to attorneys' fees and**

**costs. The balance of the allegations constitute legal conclusions for which no answer is required.**

## FACTUAL BACKGROUND

10.     Tatham and Anderson own Parcel# 3213-013-159-10 in the Township, commonly known as 6789 Oak Beach Rd., Port Austin, MI 48467 (the "Property").

**ANSWER:   Admitted upon information and belief.**

11.     Tatham and Anderson purchased the Property on October 9, 2020.

**ANSWER:   The allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leave Plaintiffs to their strictest proofs.**

12.     When Tatham and Anderson purchased the Property, it was zoned B-1 Local Commercial and had formerly housed a tavern.

**ANSWER:   Admitted that at the time Tatham and Anderson purchased the Property it was zoned B-1 Local Commercial and that a tavern was previously located on the property. By way of further answer, the prior tavern was a lawful nonconforming commercial use that had long since lapsed and been abandoned before Tatham and Anderson purchased the property.**

13.     Tatham and Anderson purchased the Property with the intent of planting lavender to operate a farm, renovating the old tavern building into a retail store and tasting room, and renovating the building to include their own personal

4

residence.

**ANSWER:   The allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leave Plaintiffs to their strictest proofs.**

14.     Tatham and Anderson are members and operators of Driftwood Lavender.

**ANSWER:   The allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leave Plaintiffs to their strictest proofs.**

15.     Driftwood Lavender leases the Property from Tatham and Anderson.

**ANSWER:   The allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leave Plaintiffs to their strictest proofs.**

16.     Driftwood Lavender leases the Property to operate a working lavender farm as a destination to offer visitors the opportunity to enjoy scenic beauty from the large lavender fields, pick and purchase lavender, and purchase handmade lavender products and unique artwork.  Visitors are also welcome to enjoy photography, painting, bird and butterfly watching, and the fairy garden.

**ANSWER:   The allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth**

**thereof, and therefore, leave Plaintiffs to their strictest proofs.**

17.     Driftwood Lavender offers guests the opportunity to purchase food, including charcuterie boards and ice cream.

**ANSWER:   The allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leave Plaintiffs to their strictest proofs.**

18.     Driftwood Lavender also offers guests the opportunity to purchase alcoholic beverages for consumption on site or off the premises.

**ANSWER:   The allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leave Plaintiffs to their strictest proofs.**

19.     Driftwood Lavender holds a Class C liquor license (L-000472722) from the Michigan Liquor Control Commission.

**ANSWER:   The allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leave Plaintiffs to their strictest proofs.**

20.     A Class C license allows the sale of brew, wine and spirits to consumers for on-premises consumption as well as limited to-go sales per Michigan law.

**ANSWER:   Denied to the extent the allegations imply that the existence of a liquor license from the Michigan Liquor Control Commission permits a**

**licensee to operate free from local zoning regulations; to the contrary, regulations promulgated by the Michigan Liquor Control Commission require that licensees comply with all local zoning ordinances.** *See* **Mich. Admin. Code. R. 436.1003(1). The balance of the allegations constitute legal conclusions for which no answer is required.**

21.     A Class C licensee may also sell food, host entertainment, live music, sporting events on television, and other activities to entertain and attract customers.

**ANSWER:   Denied to the extent the allegations imply that the existence of a liquor license from the Michigan Liquor Control Commission permits a licensee to operate free from local zoning regulations; to the contrary, regulations promulgated by the Michigan Liquor Control Commission require that licensees comply with all local zoning ordinances.** *See* **Mich. Admin. Code. R. 436.1003(1). The balance of the allegations constitute legal conclusions for which no answer is required.**

22.     Driftwood Lavender holds a Specially Designated Merchant ("SDM") license (L-000472723) from the Michigan Liquor Control Commission.

**ANSWER:   The allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

23.     An SDM license allows a licensee to sell packaged beer and wine for

7

off-premises consumption.

**ANSWER:   Denied to the extent the allegations imply that the existence of a Specially Designated Merchant license from the Michigan Liquor Control Commission permits a licensee to operate free from local zoning regulations; to the contrary, regulations promulgated by the Michigan Liquor Control Commission require that licensees comply with all local zoning ordinances. *See* Mich. Admin. Code. R. 436.1003(1). The balance of the allegations constitute legal conclusions for which no answer is required.**

24.     Driftwood Lavender holds a Dance-Entertainment permit (23-7156) from the Michigan Liquor Control Commission. This permit allows for dancing on the licensee's premises and monologues, dialogues, motion pictures, still slides, closed circuit television, contests, or other performances for public viewing on the licensee's premises.

**ANSWER:   Neither admitted nor denied that Driftwood Lavender holds a Dance-Entertainment permit from the Michigan Liquor Control Code for the reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs. Denied to the extent the allegations imply that the existence of a Specially Designated Merchant license from the Michigan Liquor Control Commission permits a licensee to operate free from local zoning regulations; to the contrary,**

**regulations promulgated by the Michigan Liquor Control Commission require that licensees comply with all local zoning ordinances.** *See* **Mich. Admin. Code. R. 436.1003(1). The balance of the allegations constitute legal conclusions for which no answer is required.**

25.     On July 18, 2022, the Township passed Ordinance No. 2022-2 to revise the Township's official zoning map and rezone the Property from B-1 Local Commercial to PUD Planned Unit Development. **(Exhibit 1: Ordinance No. 2022-2.)**

**ANSWER:   Admitted that at Plaintiffs' request the Township passed Ordinance No. 2022-2 which revised the Township's zoning map to rezone the Property from B-1 Local Commercial to PUD Planned Unit Development District.**

26.     Ordinance No. 2022-2 was passed to specifically regulate and re-zone the Property.

**ANSWER:   Ordinance No. 2022-2 speaks for itself and allegations to the contrary are denied as untrue. By way of further answer, Plaintiffs approached the Township requesting a PUD as the property was previously zoned B-1, which did not permit the uses Plaintiffs proposed. In other words, Plaintiffs sought out and agreed to the very regulations they now challenge as unconstitutional.**

27. Ordinance No. 2022-2 imposed conditions on Driftwood Lavender's use of the Property.

**ANSWER: Ordinance No. 2022-2 speaks for itself and allegations to the contrary are denied as untrue.**

28. One condition was that "any cultivation of additional crops shall be limited to tulips, daffodils, sun flowers, daisies, chrysanthemum, impatience, begonia, edelweiss, and similar plant types common to flower gardens. The growing of marijuana or hemp is prohibited." *(Id.,§ 4(c).)*

**ANSWER: Ordinance No. 2022-2 speaks for itself and allegations to the contrary are denied as untrue.**

29. Another condition was that "No more than ten percent (10%) of the retail store floor area of the former tavern building that is used to display, store and/or sell products shall be devoted to the display, storage and/or sale of products that do not principally originate from the growing of flowers on the [Property] or craft products created on the [Property] exclusively by the applicants. Examples of products subject to the ten percent (10%) restriction include baskets, ribbons, artwork, and engraved glassware, if not principally created on the [Property]. The restrictions of this Condition (d) shall separately apply to any retail store wall area used to display, store and/or sell products." *(Id.,§ 4(d).)*

**ANSWER: Ordinance No. 2022-2 speaks for itself and allegations to the**

**contrary are denied as untrue.**

30.     Another condition was that "The PUD facility and [Property] shall not be open to the public between hours of 9:00 p.m. and 9:00 a.m." *(Id.,§ 4(e).)*

**ANSWER:   Ordinance No. 2022-2 speaks for itself and allegations to the contrary are denied as untrue.**

31.     Another condition was that the Property "shall not be used for special events such as weddings, parties, reunions, funerals, concerts, celebrations, and similar planned gatherings." *(Id.,§ 4(f).)*

**ANSWER:   Ordinance No. 2022-2 speaks for itself and allegations to the contrary are denied as untrue.**

32.     Another condition was that "All parking of vehicles for PUD customers, workers, the applicants and visitors to the [Property] shall be entirely on the [Property].  Parking on or along Oak Beach Road (or in its right-of-way or easement) is prohibited, as is the shuttling of customers or visitors from a location off of or beyond the [Property]." *(Id.,§ 4(j).)*

**ANSWER:   Ordinance No. 2022-2 speaks for itself and allegations to the contrary are denied as untrue.**

33.     Another condition is that "All parking lot lighting (including lighting for any approved overflow parking) shall be off when the facility is not open to the public." *(Id., § 4(k).)*

**ANSWER:  Ordinance No. 2022-2 speaks for itself and allegations to the contrary are denied as untrue.**

34.      If Plaintiffs violate these, or any other conditions, the Township threatens legal action. "Failure to comply with any provision of the Zoning Ordinance, the approved final site plan, this Ordinance or any of the PUD approval documents shall be deemed to be a violation of the Lake Township Zoning Ordinance.  Violation of the Lake Township Zoning Ordinance could prompt legal action against the applicants or the then-property owners, including, but not limited to, prosecution, a civil lawsuit and/or revocation of any approvals or permits hereunder." *(Id.,§ 4(s).)*

**ANSWER:  Ordinance No. 2022-2 speaks for itself and allegations to the contrary are denied as untrue.**

35.      Plaintiffs objected to the conditions found in §§ 4(c), 4(d), 4(e), 4(f), 4U), 4(k), and 4(s), but the Township enacted them over Plaintiffs' objections.

**ANSWER:  The allegations are denied as untrue.**

36.      Plaintiffs have made multiple requests for the Township to remove these conditions, but Township officials have refused and instead have thrown up arbitrary roadblocks to dissuade Plaintiffs for asking for commonsense treatment.

**ANSWER:  The allegations are denied as untrue. By way of further answer, Plaintiffs are well aware of the administrative avenues available to them to seek**

12

an interpretation from the ZBA or amendment to the PUD via the legislative process, yet have failed to avail themselves of these pathways before running to this Court asserting constitutional violations and have, thus, failed to achieve finality. By way of example, Plaintiffs applied for an amendment to the PUD, but have not completed that process with the Township and shortly before filing suit through counsel noted via email on January 3, 2026 that they are "continuing to work through the questions and issues raised by the Planning Commission during the November 12, 2025, Planning Commission meeting, including working with their surveyor to update the site plan."

37. Lake Township has arbitrarily enforced these conditions.

**ANSWER: The allegations are denied as untrue.**

38. Terry Kelly is the Township's Building & Zoning Administrator.

**ANSWER: Admitted that on or about September 16, 2024, Terry Kelly was retained as the Township's Building & Zoning Administrator.**

39. By way of just one example, to encourage customers to come to Driftwood Lavender, Plaintiffs want to allow a qualified yoga instructor to teach yoga classes in the lavender fields.

**ANSWER: Denied that hosting commercial yoga classes is a use permitted under Ordinance No. 2022-2 as such activities constitute a "special event" which are not allowed. The balance of the allegations are neither admitted nor**

13

denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.

40.     Plaintiffs received verbal approval from Terry Kelly that yoga classes were allowed under Ordinance 2022-2.

**ANSWER:   The allegations are denied as untrue.**

41.     Yet the next day, the Township arbitrarily switched its position and has since considered yoga classes to be "special events" and prohibits Driftwood Lavender from hosting them.

**ANSWER:   Admitted that Ordinance No. 2022-2 prohibits hosting "special events". Denied that the Township switched its position. The balance of the allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

42.     In 2024, Driftwood Lavender hosted a birthday party for Terry Kelly's daughter.

**ANSWER:   Admitted that before Terry Kelly was aware of the limitations contained in Driftwood Lavender's PUD his daughter hosted a birthday party at Driftwood Lavender. Denied to the extent Plaintiffs impliedly allege that Terry Kelly's daughter hosting a birthday party before Mr. Kelly was aware of**

14

**the limitations contained in Ordinance No. 2022-2 could or would constitute any sort of waiver or permission to host such events.**

43.      On June 6, 2025, Kelly sent Driftwood Lavender a letter stating that "It has been noted that events are being planned and taking place at your facility" and "These are serious violations of your zoning approval and the Lake Township Zoning Ordinance." **(Exhibit 2: June 6, 2025 Violation Letter.)**

**ANSWER:   The June 6, 2025 letter speaks for itself and allegations to the contrary are denied as untrue.**

44.      The June 6, 2025 violation letter also threatened Plaintiffs with violations of§  4(k) (lighting) and§ 4(j) parking. *(Id.)*

**ANSWER:   The June 6, 2025 letter speaks for itself and allegations to the contrary are denied as untrue.**

45.      On July 25, 2025, the Township's legal counsel issued a legal opinion (the "Legal Opinion") on "whether yoga classes (or the equivalent) can be conducted at the business known as Driftwood Lavender Farm (the 'Lavender Farm') under its 2023 planned unit development ('PUD') final zoning approval, as well as discussing other related zoning issues." **(Exhibit 3: July 25, 2025 Legal Opinion.)**

**ANSWER:   The July 25, 2025 letter speaks for itself and allegations to the contrary are denied as untrue.**

46.      The Legal Opinion states that "commercial yoga classes are a 'special

15

event' not allowed under the PUD Approval." *(Id. at 4.)*

**ANSWER:   The July 25, 2025 letter speaks for itself and allegations to the contrary are denied as untrue.**

47.   The Legal Opinion further states, with respect to yoga classes, that "the Zoning Administrator has made that interpretation/determination and the Landowners have not appealed that decision to the Lake Township Zoning Board of Appeals." *(Id.)*

**ANSWER:   The July 25, 2025 letter speaks for itself and allegations to the contrary are denied as untrue.**

48.   The Zoning Administrator has never presented Plaintiffs a written interpretation of this alleged decision regarding commercial yoga classes and, upon information and belief, no such written interpretation exists that would have allowed Plaintiffs to appeal to the Lake Township Zoning Board of Appeals.

**ANSWER:   The allegations are denied as untrue. By way of further answer, Plaintiffs failed to avail themselves of administrative remedies with the Township, including, but not limited to, seeking an interpretation from the ZBA, a review of any determination by the Zoning Administrator, or obtaining a final decision from the Township regarding an amendment to the PUD before filing this lawsuit.**

49.   The Legal Opinion represents the Township's official position that

16

Plaintiffs cannot allow yoga classes on the Property.

**ANSWER: The allegations constitute legal conclusions for which no answer is required. Denied that the July 25, 2025 letter can, or does, represent the Township's official position.**

50. The Legal Opinion also states that "beer is being unlawfully sold on the Property." *(Id.* **at 3.)**

**ANSWER: The July 25, 2025 letter speaks for itself and allegations to the contrary are denied as untrue.**

51. The Legal Opinion represents the Township's official position that Plaintiffs cannot sell beer on the Property.

**ANSWER: The allegations constitute legal conclusions for which no answer is required. Denied that the July 25, 2025 letter can, or does, represent the Township's official position.**

52. The Legal Opinion also states that "there have been other special even[t]s (including at least one large birthday party for a third-party) on the Property." *(Id.* **at** 3.)

**ANSWER: The July 25, 2025 letter speaks for itself and allegations to the contrary are denied as untrue.**

53. While determining that yoga and birthday parties are not allowed, the Township does not have any official guidance as to what constitutes a "special

event."

**ANSWER:   The allegations are denied as untrue.**

54.     Plaintiffs have attempted to work with Lake Township to seek clarity on the problematic conditions and even had their attorney send a letter outlining the legal issues with them.  **(Exhibit 4: September 22, 2025 Aloia Letter.)**

**ANSWER:   Admitted that Plaintiffs, through counsel, submitted a letter on or about September 22, 2025. Denied that this letter constitutes an appropriate or effective method of attempting to induce the Township to arrive at a final position with respect to Plaintiffs' requested modifications to their PUD or to "seek clarity" regarding the conditions in the PUD. By way of further answer, Plaintiffs have a currently-pending application to amend their PUD pending before the Township, which has been adjourned several times at Plaintiffs' request. Plaintiffs are well aware of the administrative avenues available to them to seek an interpretation from the ZBA or amendment to the PUD via the legislative process, yet have failed to avail themselves of these pathways before running to this Court, asserting constitutional violations and have, thus, failed to achieve finality.**

55.     The Township refuses to remedy these illegal conditions and Plaintiffs have been left with no choice but to file this lawsuit to protect their rights.

**ANSWER:   The allegations are denied as untrue.**

## COUNT I- VIOLATION OF DUE PROCESS - VOID FOR VAGUENESS
### (42 U.S.C. § 1983)

56.     Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

**ANSWER:   Defendant incorporates by reference its prior responses.**

57.     The Due Process Clause of the Fourteenth Amendment is applicable to local units of government like the Township.

**ANSWER:   The allegations constitute legal conclusions for which no answer is required.**

58.     Ordinance No. 2022-2, § 4(f), prohibits Plaintiffs from hosting "special events" or "similar planned gatherings."

**ANSWER:   Ordinance No. 2022-2 speaks for itself and allegations to the contrary are denied as untrue.**

59.     Ordinance No. 2022-2 does not define the term "special events."

**ANSWER:   The allegations are denied as untrue.**

60.     Township officials have refused to provide Plaintiffs with a definition for the term "special events" as used in Ordinance No. 2022-2.

**ANSWER:   The allegations are denied as untrue.**

61.     Instead, Township officials have given varying and confusing interpretations over what constitutes a "special event."

**ANSWER:   The allegations are denied as untrue.**

19

62.     Building and Zoning Administrator Terry Kelly has stated that special events are those that are "advertised to make people aware" of them. **(Exhibit 5: June 27, 2025 Article.)**

**ANSWER:   The attached news article speaks for itself and allegations to the contrary are denied as untrue. Denied that comments from a news article constitute a binding position of a municipality.**

63.     Meanwhile, Planning Commissioner Bob Siver has disagreed and stated that "advertising is not a condition for what is considered a special event." *(Id.)*

**ANSWER:   The attached news article speaks for itself and allegations to the contrary are denied as untrue. Denied that comments from a news article constitute a binding position of a municipality.**

64.     Instead, Siver has stated that "anything that isn't 'fundamental' can be inferred to be 'special.'"

**ANSWER:   The attached news article speaks for itself and allegations to the contrary are denied as untrue. Denied that comments from a news article constitute a binding position of a municipality.**

65.     The Township has prevented Plaintiffs from hosting yoga m the lavender fields.

**ANSWER:   Ordinance No. 2022-2 speaks for itself and allegations to the**

20

**contrary are denied as untrue.**

66.     Ordinance 2022-2, § 4(f), also prevents Plaintiffs from using their Property for "concerts," but it is unclear what is meant by "concerts" and whether this means Plaintiffs cannot play any music, host live performances, or where the line is between the two.

**ANSWER:   Ordinance No. 2022-2 speaks for itself and allegations to the contrary are denied as untrue. Denied that Ordinance No. 2022-2 is unclear or vague in any way.**

67.     But for the Township's vague interpretation of Ordinance No. 2022-2, § 4(f), Plaintiffs would have hosted more events and activities on their Property.

**ANSWER:   Denied that the Township has a "vague interpretation[] of Ordinance No. 2022-2". The balance of the allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

68.     Customers have canceled reservations at Driftwood Lavender because of the Township's vague and varying interpretation of the term "special event."

**ANSWER: Denied that the Township has "vague and varying interpretation[s]" of the term "special event". The balance of the allegations are**

21

neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.

69.     Because of this uncertainty and confusion from Township officials over what constitutes a "special event" and "concerts" Plaintiffs have turned down requests from customers to hold various activities at Driftwood Lavender.

**ANSWER:   Denied that any uncertainty or confusion exists regarding the terms "special event" and/or "concerts". The balance of the allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

70.     Plaintiffs have lost profits as a result of the Township's vague and varying interpretation of the term "special events" and "concerts."

**ANSWER: Denied that the Township has "vague and varying interpretation[s]" of the terms "special event" and/or "concert". The balance of the allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

WHEREFORE, Defendant respectfully requests that this Honorable Court enter judgment in its favor, dismissing Plaintiffs' Complaint, and taxing all costs and

fees, including attorney fees, against Plaintiffs pursuant to 42 U.S.C. § 1988.

## COUNT II - VIOLATION OF FIRST AMENDMENT RIGHT TO ENGAGE IN COMMERCIAL SPEECH
### (42 U.S.C. § 1983)

71.     Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

**ANSWER:   Defendant incorporates by reference its prior responses.**

72.     The First Amendment to the United States Constitution prohibits the abridgment of the freedom of speech.

**ANSWER:   The allegations constitute legal conclusions for which no answer is required.**

73.     The protections of the First Amendment have been extended through the Fourteenth Amendment to prohibit the abridgement of the freedom of speech and freedom of expression by state and local governments.

**ANSWER:   The allegations constitute legal conclusions for which no answer is required.**

74.     Persons violating the First and Fourteenth Amendments under color of state law are liable under 42 U.S.C. § 1983.

**ANSWER:   The allegations constitute legal conclusions for which no answer is required.**

75.     Commercial speech is protected by the First Amendment of the United

23

States Constitution.

**ANSWER: The allegations constitute legal conclusions for which no answer is required.**

76. The Township has violated Plaintiffs' freedom of speech by unlawfully restricting its commercial speech.

**ANSWER: The allegations are denied as untrue.**

77. For a regulation of commercial speech to be constitutional, courts apply a four-part test: 1) if the speech concerns lawful activity and is not misleading; 2) the asserted governmental interest must be substantial; 3) the regulation must directly advance the governmental interest asserted; and 4) the regulation must not be more extensive than is necessary to serve that interest. *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York,* 447 U.S. 557, 566 (1980).

**ANSWER: The allegations constitute legal conclusions for which no answer is required.**

78. Hosting customers for activities and events is a lawful activity and is not misleading.

**ANSWER: The allegations constitute legal conclusions for which no answer is required. By way of further answer, event hosting is not, in and of itself, protected by the First Amendment.**

79. Activities which seek to "have prospects enter their stores and

24

purchase Plaintiffs' products ...  [are] commercial speech." *FF Cosmetics FL Inc. v. City of Miami Beach, Florida,* 129 F. Supp. 3d 1316, 1321 (S.D. Fla. 2015).

**ANSWER:   The case cited speaks for itself and allegations to the contrary are denied as untrue. By way of further answer, event hosting is not, in and of itself, protected by the First Amendment.**

80.      Hosting activities at Driftwood Lavender is commercial speech because the activities are "essentially an advertisement" of Driftwood Lavender and the motivation for engaging in the speech is purely economic. *Am. Future Sys., Inc. v. Pennsylvania State Univ.,* 752 F.2d 854, 857 (3d Cir. 1984); *see also Bd. of Trustees of State University of New York v. Fox,* 492 U.S. 469 (1989).

**ANSWER:   The case cited speaks for itself and allegations to the contrary are denied as untrue. Denied that hosting activities is commercial speech. By way of further answer, event hosting is not, in and of itself, protected by the First Amendment.**

81.      For example, Driftwood Lavender wants to host yoga classes to draw in customers to enjoy the lavender fields with the hope customers would spend money buying retail items, food, or alcoholic beverages following the yoga class.

**ANSWER:   Denied that Plaintiffs' hypotheticals constitute protected conduct under the First Amendment. The balance of the allegations are neither admitted nor denied for reason that Defendant is without sufficient information**

to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.

82. As discussed above, the Township considers it an impermissible special event if it is "advertised to make people aware" of the event.

**ANSWER: To the extent Plaintiffs refer to the news article cites above, the attached news article speaks for itself and allegations to the contrary are denied as untrue. Denied that comments from a news article constitute a binding position of a municipality. The balance of the allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

83. Plaintiffs also seek to host customers to advertise Driftwood Lavender through word of mouth and customer goodwill.

**ANSWER: Denied that Plaintiffs' hypotheticals constitute protected conduct under the First Amendment. The balance of the allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

84. When customers are present at Driftwood Lavender, patrons who enjoy their visit share their experiences with friends, colleagues and the extended

community. Every visit is an opportunity to encourage word-of-mouth advertising of Driftwood Lavender to encourage additional customers to seek Driftwood Lavender out to engage in a commercial transaction of having, for example, weddings, bridal showers, baby showers or book clubs at Driftwood Lavender.

**ANSWER:   Denied that Plaintiffs' hypotheticals constitute protected conduct under the First Amendment. The balance of the allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

85.     Similarly, by hosting customers for yoga, birthday parties, live music, holiday displays, showers, corporate events, fundraisers and other similar events, Plaintiffs can induce customers to spend money at Driftwood Lavender.

**ANSWER:   Denied that Plaintiffs' hypotheticals constitute protected conduct under the First Amendment. The balance of the allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

86.     Having these activities take place on the Property also allows Plaintiffs to market the Property to prospective future customers.

**ANSWER:   Denied that Plaintiffs' hypotheticals constitute protected conduct**

**under the First Amendment. The balance of the allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

87. Hosting customers on the Property for these activities is a lawful activity and is not misleading.

**ANSWER: Denied that Plaintiffs' hypotheticals constitute protected conduct under the First Amendment. The balance of the allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

88. Even if the Township's regulations did advance a substantial governmental interest, they do so in a way that is more extensive than necessary.

**ANSWER: Admitted Ordinance No. 2022-2 advances substantial governmental interests. Denied that Ordinance No. 2022-2 is more extensive than necessary.**

89. Plaintiffs' ability to host customers for, e.g., yoga, birthday parties, live music, weddings, showers, corporate events, and fundraisers is severely limited.

**ANSWER: Denied that Plaintiffs' hypotheticals constitute protected conduct under the First Amendment. The balance of the allegations are neither**

**admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

90.     But for§ 4(f), Plaintiffs would host these events for customers.

**ANSWER:    The allegations are denied as untrue.**

91.     Through § 4(f), the Township deprives Plaintiffs of their constitutional rights to engage in speech in violation of the First Amendment.

**ANSWER:    The allegations are denied as untrue.**

92.     The Township lacks any compelling or substantial governmental interest in regulating and eliminating Plaintiffs' commercial speech by completely banning "special events" and "similar planned gatherings."

**ANSWER:    Denied that the Township is regulating or eliminating Plaintiff's alleged commercial speech rights. The balance of the allegations are denied as untrue.**

93.     Even if the Township could proffer a compelling/substantial governmental interest in regulating and eliminating Plaintiffs' speech, its regulations do not directly advance its asserted governmental interests.'

**ANSWER:    The allegations are denied as untrue.**

94.     Even if the Township could proffer a compelling/substantial governmental interest in regulating and eliminating Plaintiffs' speech, and even if

those regulations directly advanced the asserted governmental interests, the regulations are more extensive than necessary because they eliminate Plaintiffs' ability to host events like yoga and birthday parties or to play music without considering less restrictive alternatives.

**ANSWER:** **The allegations are denied as untrue.**

95. These First Amendment violations have caused Plaintiffs to suffer damages, including lost profits from events that they would have held but for§ 4(f) and lost profits from additional sales of merchandise, food, and alcohol they would have made but for§ 4(f).

**ANSWER:** **The allegations are denied as untrue.**

96. These violations of Plaintiffs' rights are ongoing and continue to date.

**ANSWER:** **The allegations are denied as untrue.**

WHEREFORE, Defendant respectfully requests that this Honorable Court enter judgment in its favor, dismissing Plaintiffs' Complaint, and taxing all costs and fees, including attorney fees, against Plaintiffs pursuant to 42 U.S.C. § 1988.

## COUNT III- VIOLATION OF FIRST AMENDMENT RIGHT TO ENGAGE IN EXPRESSIVE CONDUCT
### (42 U.S.C. § 1983)

97. Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

**ANSWER:** **Defendant incorporates by reference its prior responses.**

30

98.     Music and live performances are expressive speech protected by the First Amendment.

**ANSWER:   The allegations constitute legal conclusions for which no answer is required.**

99.     Music is protected under the First Amendment as a form of expression and communication. *See Ward v. Rock Against Racism,* 491 U.S. 781, 790 (1989).

**ANSWER:   The allegations constitute legal conclusions for which no answer is required.**

100.    The First Amendment also protects the use of sound amplification equipment. *See Saia* v. *People of New York,* 334 U.S. 558 (1948); *Beckerman v. City of Tupelo,* 664 F.2d 502,515 (5th Cir. 1981).

**ANSWER:   The allegations constitute legal conclusions for which no answer is required.**

101.    "Even when offered for entertainment purposes, and not political or ideological reasons, music is entitled to First Amendment protection." *Hassay v. Mayor,* 955 F. Supp. 2d 505,518 (D. Md. 2013) (citing *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 65 (1981) ("Entertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcast by radio and television, and live entertainment, such as musical and dramatic works fall within the First

31

Amendment guarantee.")); *IOTA XI Chapter of Sigma Chi Fraternity v. George Mason Univ.,* 993 F.2d 386, 390 (4th Cir. 1993) ("[e]xpression devoid of 'ideas' but with entertainment value may also be protected because '[t]he line between the informing and the entertaining is too elusive'" (quoting *Winters v. New York,* 333 U.S. 507,510 (1948)).

**ANSWER:   The cases cited speak for themselves and allegations to the contrary are denied as untrue.**

102.     Political rallies and religious gatherings are also protected by the First Amendment.

**ANSWER:   The allegations constitute legal conclusions for which no answer is required.**

103.     Ordinance 2022-2, § 4(f), prevents Plaintiffs from using their Property for "concerts," meaning that Plaintiffs cannot play music or host live performances.

**ANSWER:   Ordinance No. 2022-2 speaks for itself and allegations to the contrary are denied as untrue.**

104.     Ordinance 2022-2, § 4(f), prevents Plaintiffs from using their Property for parties, reunions, celebrations, and "similar planned gatherings," meaning Plaintiffs could not host political rallies, fundraisers, Bible studies, or business meetings.

**ANSWER:   Ordinance No. 2022-2 speaks for itself and allegations to the contrary are denied as untrue.**

105.   But for Ordinance 2022-2, § 4(f) and their fear of receiving a violation from the Township, Plaintiffs would host music, live performances, political rallies, fundraisers, Bible studies, business meetings, and similar gatherings on the Property.

**ANSWER:   Denied that Ordinance No. 2022-2 violates the First Amendment. The balance of the allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

106.   Ordinance 2022-2, § 4(f), is overbroad in violation of the First Amendment because there are a substantial number of instances in which the law cannot be applied constitutionally.

**ANSWER:   The allegations are denied as untrue.**

107.   Ordinance 2022-2, § 4(f) unlawfully regulates expressive conduct such as music, live performances, political rallies, fundraisers, Bible studies, business meetings, and similar gatherings that are protected as expressive speech by the First Amendment.

**ANSWER:   The allegations are denied as untrue.**

108.   Plaintiffs have been harmed by Ordinance 2022-2, § 4(f) because the Township has threatened to issue violations to Plaintiffs under Ordinance 2022-2, §

33

4(f) and because Plaintiffs have had to forgo engaging in this expressive speech due to fear of further enforcement from the Township.

**ANSWER:   The allegations are denied as untrue.**

WHEREFORE, Defendant respectfully requests that this Honorable Court enter judgment in its favor, dismissing Plaintiffs' Complaint, and taxing all costs and fees, including attorney fees, against Plaintiffs pursuant to 42 U.S.C. § 1988.

## COUNT IV - EQUAL PROTECTION VIOLATION (42 U.S.C. § 1983)

109.   Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

**ANSWER:   Defendant incorporates by reference its prior responses.**

110.   The Equal Protection Clause of the Fourteenth Amendment applies to local units of government like the Township.

**ANSWER:   The allegations constitute legal conclusions for which no answer is required.**

111.   There are two other SOM license holders in the Township, Oak Beach Pantry (L-000132233) and Frank's Party Store (L-000275014).

**ANSWER:   The allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

112.   Driftwood Lavender is similarly situated to Oak Beach Pantry and

34

Frank's Party Store because they all hold SDM licenses issued by the State of Michigan.

**ANSWER:   The allegations are denied as untrue. Driftwood Lavender is not similarly situated to Oak Beach Pantry and Frank's Party Store in all material respects. By way of example, Driftwood Lavender is zoned as a PUD; Oak Beach Pantry and Frank's Party Store are zoned in the B-1 Local Business District.**

113.   The Township does not prohibit Oak Beach Pantry or Frank's Party Store from selling beer.

**ANSWER:   Denied that Driftwood Lavendar is similarly situated to Oak Beach Pantry or Frank's Party Store. Driftwood Lavender is not similarly situated to Oak Beach Pantry and Frank's Party Store in all material respects.**

114.   The Township does not require Oak Beach Pantry or Frank's Party Store to turn off their outdoor lights at night.

**ANSWER:   Denied that Driftwood Lavender is similarly situated to Oak Beach Pantry or Frank's Party Store. Driftwood Lavender is not similarly situated to Oak Beach Pantry and Frank's Party Store in all material respects.**

115.   The Township does not restrict Oak Beach Pantry or Frank's Party Store to only use 10% of their retail floor area to market products-i.e., food, beer, and wine-that are not manufactured on site.

35

**ANSWER:   Denied that Driftwood Lavender is similarly situated to Oak Beach Pantry or Frank's Party Store. Driftwood Lavender is not similarly situated to Oak Beach Pantry and Frank's Party Store in all material respects.**

116.   The Township does not prohibit customers from arriving at Oak Beach Pantry or Frank's Party store by shuttle, public transportation, rideshare (such Uber and Lyft), or drop off by friends and family.

**ANSWER:   Denied that Driftwood Lavender is similarly situated to Oak Beach Pantry or Frank's Party Store. Driftwood Lavender is not similarly situated to Oak Beach Pantry and Frank's Party Store in all material respects.**

117.   There is no rational basis for the Township to allow Oak Beach Pantry and Frank's Party store to sell beer while Driftwood Lavender cannot.

**ANSWER:   The allegations are denied as untrue.**

118.   There is no rational basis for the Township to allow Oak Beach Pantry and Frank's Party store to leave their lights on at night while Driftwood Lavender cannot.

**ANSWER:   The allegations are denied as untrue.**

119.   There is no rational basis for the Township to allow Oak Beach Pantry and Frank's Party Store to use their entire floor area to sell food, beer, and wine while Driftwood Lavender can only use 10% of its retail floor area.

**ANSWER:   The allegations are denied as untrue.**

120.     There is no rational basis for the Township to allow customers to arrive at Oak Beach Pantry and Frank's Party Store by shuttle, public transportation, rideshare (such Uber and Lyft), or drop off by friends and family but for the Township to prohibit that from happening at Driftwood Lavender.

**ANSWER:   The allegations are denied as untrue.**

121.     Plaintiffs have suffered damage from this unequal treatment by the Township including, but not limited to, an increased security risk at night because they cannot keep their lights on and lost profits from a reduced floor space, the inability to sell beer, and a reduction in the number of customers that can travel to Driftwood Lavender due to the Township's travel restrictions.

**ANSWER:   The allegations are denied as untrue.**

122.     Driftwood Lavender is also a farm and, therefore, similarly situated to every other farm in Lake Township.

**ANSWER:   Denied that Driftwood Lavender is similarly situated to every other farm in Lake Township. The balance of the allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs. By way of further answer, Plaintiffs previously disavowed comparison to a farm when Tatham and Anderson wrote to the Township on August 8, 2021, "[t]he intent of the use of this property is very unique and unlike**

**anything in Lake Township or even Huron County, that we are aware of. It is not just a dwelling on a farmed parcel. Nor can it even be compared to a farmed parcel."**

123.     The Township does not regulate the type of crops that may be grown at other farms within the Township.

**ANSWER:   Denied that Driftwood Lavender is similarly situated to every other farm in Lake Township.**

124.     There is no rational basis for the Township to allow every other farm located within the Township to choose the types of crops they will grow while limiting Plaintiffs to a narrow list of choices.

**ANSWER:   The allegations are denied as untrue.**

125.     But for the Township's regulations of crops that may be grown on the Property, Plaintiffs would grow additional crops beyond those allowed in Ordinance No. 2022-2, § 4(c) and have suffered damage from the Township's limitations.

**ANSWER:   Denied that Plaintiffs have suffered damages. The balance of the allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

WHEREFORE, Defendant respectfully requests that this Honorable Court enter judgment in its favor, dismissing Plaintiffs' Complaint, and taxing all costs and

fees, including attorney fees, against Plaintiffs pursuant to 42 U.S.C. § 1988.

## COUNT V - STATE LAW PREEMPTION

126.    Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

**ANSWER:   Defendant incorporates by reference its prior responses.**

127.    Article I,§ 40 of the Michigan Constitution of 1963 gives the Michigan Liquor Control Commission "complete control of the alcoholic beverage traffic within this state, including the retail sales thereof."

**ANSWER:   The allegations constitute legal conclusions for which no answer is required.**

128.    The Michigan Liquor Control Code allows Class C licensees to sell beer, wine, and spirits for on-premises consumption. *See* Mich. Comp. Laws § 436.1537(b) ("The following classes of vendors may sell alcoholic liquor at retail as provided in this section ...   Class C licensee, where beer, wine, and mixed spirit drink, and spirits may be sold for consumption on the premises.").

**ANSWER:   The allegations constitute legal conclusions for which no answer is required. The statute cited speaks for itself and allegations to the contrary are denied as untrue.**

129.    The Michigan Liquor Control Code allows SDM licensees to sell beer and wine to go for off-premises consumption. *See* Mich. Comp. Laws§ 436.1537(£)

39

("Specially designated merchants, where beer, wine, and mixed spirit drink may be sold for consumption off the premises only.")

**ANSWER:   The allegations constitute legal conclusions for which no answer is required. The statute cited speaks for itself and allegations to the contrary are denied as untrue.**

130.    Driftwood Lavender holds a Class C liquor license.

**ANSWER:   The allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

131.    Driftwood Lavender holds a SDM license.

**ANSWER:  The balance of the allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

132.    Lake Township has taken the position that "beer is being unlawfully sold on the Property."  **(Exhibit 3: July 25, 2025 Legal Opinion at 3.)**

**ANSWER: The July 25, 2025 letter speaks for itself and allegations to the contrary are denied as untrue. Denied that the July 25, 2025 letter can, or does, represent the Township's official position.**

133.    Lake Township's official position is that Driftwood Lavender may not sell beer on the Property at all, regardless of whether the sale is made for

consumption on premises or for consumption off-premises.

**ANSWER: Denied that the July 25, 2025 letter can, or does, represent the Township's official position.**

134.    Lake Township's position that Driftwood Lavender may not sell beer conflicts with, and is preempted by, Article I, § 40 of the 1963 Michigan Constitution, Mich. Comp. Laws § 436.1537(b) and Mich. Comp. Laws § 436.1537(£).

**ANSWER:  The allegations are denied as untrue. By way of further answer, the Michigan Liquor Control Commission expressly requires licensees to comply with local zoning ordinances. *See* Mich. Admin. Code. R. 436.1003(1).**

135.    Lake Township has threatened Driftwood Lavender with violations if it continues to sell beer.

**ANSWER: The allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

136.    Upon information and belief, Lake Township's official position is also that Driftwood Lavender may not sell spirits for on-premises consumption.

**ANSWER: To the extent Plaintiffs' allegations related to the referenced July 25, 2025 letter, the letter speaks for itself and allegations to the contrary are denied as untrue. Denied that the July 25, 2025 letter can, or does, represent**

41

the Township's official position.

137.     Lake Township's position that Driftwood Lavender may not sell spirits for on-premises consumption conflicts with, and is preempted by, Mich. Comp. Laws§ 436.1537(b).

**ANSWER:  The allegations are denied as untrue. By way of further answer, the Michigan Liquor Control Commission expressly requires licensees to comply with local zoning ordinances. *See* Mich. Admin. Code. R. 436.1003(1).**

138.     The Michigan Liquor Control Code states that "an on-premises and an off-premises licensee shall not sell, give away, or furnish alcoholic liquor between the hours of 2  a.m. and 7 a.m. on any day." Mich. Comp. Laws§ 436.2114(1).

**ANSWER:  The allegations constitute legal conclusions for which no answer is required. The statute cited speaks for itself and allegations to the contrary are denied as untrue.**

139.     The very next subsection of the Liquor Control Code limits the authority of local government to regulate hours of operation of on- and -off premises licensees on Sundays.  *See* [**sic]**

**ANSWER:  The allegations constitute legal conclusions for which no answer is required. The statute cited speaks for itself and allegations to the contrary are denied as untrue.**

140.     Both the Michigan Supreme Court and the United States Court of

Appeals for the Sixth Circuit have interpreted the language from§ 436.2114(1) to allow on- and off-premises licensees to sell alcohol until 2:00 a.m. and to prevent local governments from shortening that time period. *Noey v. City of Saginaw,* 261 N.W. 88, 89-90 (Mich. 1935) ("Under the broad power thus conferred upon the liquor control commission by the Constitution and the statute, it must be held that its regulations relative to the hours of closing are binding upon all licensees, and are not affected by the provision in the ordinance relating thereto."); *R.S.WW., Inc. v. City of Keego Harbor,* 397 F.3d 427,430,436 (6th Cir. 2005) ("Michigan laws and regulations permit liquor licensees to serve food and alcohol until 2:00 a.m" and "[u]nder Michigan law, a liquor license is property which includes the right to serve alcohol until 2:00 a.m.").

**ANSWER: The allegations constitute legal conclusions for which no answer is required. Additionally, the cases cited speak for themselves and allegations to the contrary are denied as untrue.**

141. Despite that authority, the Township also limits Driftwood Lavender's hours of operations, including alcohol sales, by stating that "The PUD facility and the [Property] shall not be open to the public between the hours of 9:00 p.m. and 9:00 a.m." **(Exhibit 1, § 4(t).)**

**ANSWER: The cases cited in the previous paragraph speak for themselves and allegations to the contrary are denied as untrue. Ordinance No. 2022-2**

43

**speaks for itself and allegations to the contrary are denied as untrue. Denied**

**that Ordinance No. 2022-2 conflicts with or is preempted by state law.**

142.     Ordinance No. 2022, § 4(f) conflicts with, and is preempted by, Article I,§ 40 of the 1963 Michigan Constitution and Mich. Comp. Laws§ 436.2114(1).

**ANSWER:    The allegations are denied as untrue. By way of further answer, the Michigan Liquor Control Commission expressly requires licensees to comply with local zoning ordinances. *See* Mich. Admin. Code. R. 436.1003(1).**

WHEREFORE, Defendant respectfully requests that this Honorable Court enter judgment in its favor, dismissing Plaintiffs' Complaint, and taxing all costs and fees, including attorney fees, against Plaintiffs pursuant to 42 U.S.C. § 1988.

## COUNT VI - VIOLATION OF DUE PROCESS - LIBERTY INTEREST
### (42 U.S.C. § 1983)

143.     Plaintiffs incorporate the preceding paragraphs as though fully restated herein.

**ANSWER:    Defendant incorporates by reference its prior responses.**

144.     Plaintiffs have a liberty interest, via the Due Process Clause of the Fourteenth Amendment, in operating their business free from arbitrary governmental interference. *See, e.g., Sanderson v. Village of Greenhills,* 726 F.2d 284 (6th Cir. 1984); *Chalmers v. City of Los Angeles,* 762 F.2d 753 (9th Cir. 1985); *United States v. Tropiano,* 418 F.2d 1069, 1076 (2d Cir. 1969); *Small v. United States,* 333 F.2d

702, 704 (3d. Cir. 1964).

**ANSWER:    The allegations constitute legal conclusions for which no answer is required. The cases cited speak for themselves and allegations to the contrary are denied as untrue. By way of further answer, Defendant denies that Plaintiffs have accurately characterized the application of the cases cited to the present litigation.**

145.    A government acts arbitrarily when it enforces restrictions that do not exist.

**ANSWER:  The allegations constitute legal conclusions for which no answer is required.**

146.    Nothing in the Lake Township Zoning Ordinance, including Ordinance No. 2022-2, prevents Driftwood Lavender from selling beer for on- and off-premises consumption via its Class C and SDM licenses, respectively.

**ANSWER:    The allegations are denied as untrue.**

147.    Nothing in the Lake Township Zoning Ordinance, including Ordinance No. 2022-2, prevents Driftwood Lavender from selling spirits for on-premises consumption via its Class C license.

**ANSWER:    The allegations are denied as untrue.**

148.    Despite that lack of regulation-and despite the Township's inability to regulate the type of alcohol sold via a lawfully held liquor license issued by the

State of Michigan-the Township arbitrarily prohibits Driftwood Lavender from selling beer and spirits.

**ANSWER:    The allegations are denied as untrue.**

149.    But for the Township's ban on the sale of beer and spirits, Driftwood Lavender would have sold beer and spirits to consumers.

**ANSWER:    The allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

150.    Driftwood Lavender has suffered damage in the form of lost profits for the sales of beer and spirits it would have made to customers but for the Township's arbitrary and unlawful prohibition.

**ANSWER:    Denied that the Township engaged in an arbitrary and unlawful prohibition. The balance of the allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

151.    Additionally, the Township limits Plaintiffs to only growing lavender or "tulips, daffodils, sun flowers, daisies, chrysanthemum, impatience, begonia, edelweiss, and similar plant types common to flower gardens. The growing of marijuana or hemp is prohibited." **(Exhibit 1, § 4(c).)**

**ANSWER:    Ordinance No. 2022-2 speaks for itself and allegations to the**

**contrary are denied as untrue.**

152.    There is no basis in law for the Township to limit the types of crops Plaintiffs may grow on the Property, and the Township's limitation of the types of crops that may be grown is arbitrary and unreasonable.

**ANSWER:    The allegations are denied as untrue.**

153.    But for the Township's regulations of crops that may be grown on the Property, Plaintiffs would grow additional crops beyond those allowed in Ordinance No. 2022-2, § 4(c) and have suffered damage from the Township's limitations.

**ANSWER:    The allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

154.    The Township's arbitrary enforcement of prohibitions that do not exist in the law violates Driftwood Lavender's liberty interest to engage in a lawful business free from arbitrary government interference.

**ANSWER:    Denied that the Township engaged in an arbitrary and unlawful prohibition. The balance of the allegations are neither admitted nor denied for reason that Defendant is without sufficient information to form a belief as to the truth thereof, and therefore, leaves Plaintiffs to their strictest proofs.**

WHEREFORE, Defendant respectfully requests that this Honorable Court enter judgment in its favor, dismissing Plaintiffs' Complaint, and taxing all costs and

47

fees, including attorney fees, against Plaintiffs pursuant to 42 U.S.C. § 1988.

McGRAW MORRIS MASUD
Attorneys for Defendant

Dated:  February 26, 2026          BY:  */s/ Bogomir Rajsic, III*
Bogomir Rajsic, III (P79191)

## AFFIRMATIVE DEFENSES

NOW COMES Defendant, Lake Township, by and through its attorneys, McGraw Morris Masud, and for its Affirmative Defenses states:

1.      Plaintiffs have failed to state a cause of action upon which relief may be granted.

2.      Plaintiffs lack standing because they have not alleged an injury that can be fairly traced to the Township's conduct and/or redressed by Court action because the activities they seek to engage in are prohibited to the same or greater extent by unchallenged provisions of the Zoning Ordinance.

3.      Plaintiffs' claims are unripe to the extent they failed to achieve finality prior to filing their Complaint as Plaintiffs failed to obtain a final decision regarding their land use claims regardless of the label.

4.      The Court lacks subject matter jurisdiction as Plaintiffs failed to achieve finality prior to filing their Complaint as Plaintiffs failed to obtain a final decision regarding their land use claims regardless of the label.

5.      Plaintiffs' claims are barred in whole or in part by the expiration of the

48

statute of limitations.

6.      Plaintiffs' claims are barred by the doctrine of laches.

7.      Plaintiffs' claims may be barred in whole or in part by their voluntary acknowledgement and agreement to the terms in the PUD they sought from and was passed by the Township.

8.      Plaintiff has failed to identify any deficient custom, policy, practice or procedure; has failed to state a cause of action against the Township; and specifically failed to state a viable municipal liability claim.

9.      The Michigan Liquor Control Commission regulations require licensees to comply with local zoning. *See* Mich. Admin. Code. R. 436.1003.

10.     Plaintiffs were required to comply with liquor control laws, regulations, and their liquor license, the Township's Zoning Ordinance and Ordinance No. 2022-2.

11.     The Township zoning ordinance is a valid and enforceable exercise of legislative authority on the part of the Township.

12.     All decisions and actions of the Township, the Township Planning Commission, the Township Zoning Board of Appeals, the Township Board of Trustees, and Township Officials relating to this matter comply with all applicable constitutions, statutes, and laws.

13.     The decisions and actions of the Township, the Township Planning

Commission, the Township Zoning Board of Appeals, the Township Board of Trustees, and Township Officials are reasonable and rationally based, not arbitrary, and not capricious.

14.     Plaintiffs' claims may be barred in whole or in part by the doctrine of unclean hands, assumption of risk, waiver, and/or estoppel.

15.     Plaintiffs have pled damages claims that are not available or awardable under controlling law.

16.     Plaintiffs' alleged injuries and/or damages were caused by Plaintiffs' own acts or omissions.

17.     Plaintiffs may have failed to mitigate their damages.

18.     The requested relief, if granted, would not be in the public interest.

19.     Plaintiffs are not similarly situated in all material respects to others in the Township and, even if they were, there is a rational basis for any alleged disparate treatment.

20.     Defendant affirmatively states that it was guided by and strictly observed all legal duties and obligations imposed by operation of law and otherwise; and further, that all actions of its agents, servants, and/or employees were careful, prudent, proper, and lawful.

21.     Defendant was engaged in the performance of governmental functions and, therefore, is immune from suit for civil damages pursuant to the principles of

governmental immunity, pursuant to MCL 691.1401, *et seq.*

22.     Plaintiffs' Complaint fails to plead in avoidance of governmental immunity.

23.     Defendant reserves the right to supplement and/or amend its affirmative defenses as warranted during the course of pre-trial discovery.

WHEREFORE, Defendant respectfully requests that this Honorable Court enter judgment in its favor, dismissing Plaintiffs' Complaint, and taxing all costs and fees, including attorney fees, against Plaintiffs pursuant to 42 U.S.C. § 1988.

McGRAW MORRIS MASUD
Attorneys for Defendant


Dated:  February 26, 2026          BY:   */s/ Bogomir Rajsic, III*
                                         Bogomir Rajsic, III (P79191)
                                         Tracey R. DeVries (P84286)
                                         44 Cesar E. Chavez Avenue, SW, Suite 200
                                         Grand Rapids, MI  49503
                                         (616) 288-3700/Fax (248) 502-4001
                                         brajsic@mcgrawmorris.com
                                         tdevries@mcgrawmorris.com


                                         Thomas J. McGraw (P48814)
                                         2075 W. Big Beaver Road, Suite 750
                                         Troy, MI  48084
                                         (248) 502-4000/Fax (248) 502-4001
                                         tmcgraw@mcgrawmorris.com